Case 14-3518 Foundations Health Solutions v. USA Oral argument, 15 minutes per side. Mr. Searby for the appellant. You may proceed. Before you start, there was some concern that whether this hearing should be closed. Is there any concern by counsel on that matter? Your Honor, I had understood that the proceedings were under seal. I don't object to others being here. Good. Good. If you had, you'd probably lost. May it please the court, good morning. My name is Edmund Searby. I represent Foundations Health. With me at counsel table and on the brief, Stanley Ball, who's also with the law firm of Baker Hostetler. I reserve four minutes. Your Honor, this is a case where the government came in and intentionally seized attorney-client privilege material and attorney work product during the pendency of an investigation. What's the support for saying they did it intentionally? The first thing they did was they primed the pump by serving in April of 2013 a subpoena for records. They then came in a little more than 30 days later and raided the executive offices of Foundations Health. They had a warrant, didn't they? They did have a search warrant. Yeah, so don't say raided. Yes, why put that word in? Just tell us what they did. Raided is a metaphor for something that this may or may not be, but we need facts and not coloration of metaphors about this. I understand, Your Honor. They executed a search warrant, the terms commonly used, but by serving the subpoena, what can we expect this company to have done? They went out and gauged counsel to work with them on the investigation, work with them on the subpoena, and they began to analyze the issues within the scope of the subpoena. The government agents then came in, executing the warrant, and they targeted the general counsel of Foundations Health. They went into the general counsel's office and they took right off his desk his file on the investigation. The file was marked on the outside. They recovered before that in response to the subpoena. They had gotten a lot of electronic records, had they? I don't believe the record's clear on this point. The rolling production pursuant to the subpoena was not very far along. The subpoena itself required a lot of work to comply with it or review massive amounts of electronic material. So I don't think the government had much of anything at the point they raided the offices, but that fact is not developed in the record. Don't say raided. I'm sorry, when they executed the search warrant. You have the word in your mind, don't you? Right. But I think the key point I want to get to is they came in, they went right into the general counsel's office, they took his file off the desk. Are you saying that's the only office that they took things from? No. They took things from other executives. They imaged computers. But when they took that file, and you can look at the inventory for the search warrant in this case, you'll see that they realized that file was titled 2013 DOJ sub, DOJ subpoena. We submit to the court that circumstantially they had to have known what they were doing. And they took the entire email account for the general counsel, as well as other key executives who would have been engaging with outside counsel, such as the chief financial officer, the chief executive of the company. And they did this with a search warrant, but they did it without a search warrant that specifically judicially authorized the seizure of attorney-client privilege material. When you look at this search warrant, you won't see any express authorization for the seizure of attorney-client privilege material. Well, is there authorization? Does it enumerate the types of material that can be seized? It enumerates subject matter categories, but there's no indication in the warrant that the magistrate who reviewed it understood that they were going in to take attorney-client privilege material, which is a very significant step. The search warrant, the probable cause stated, and I haven't read it, the probable cause stated in the search warrant itself was what? We don't know. The affidavit in support of the search warrant has remained under seal, and there's no indication the district court judge ever reviewed it, even in camera. So we don't know exactly what the probable cause is. If you look at the warrant, you'll see that this was a health care case that it appeared to involve, by the categories of documents they were asking for, it appeared to involve questions of whether ancillary third-party contracts violated kickback laws. That's what we can define from the four corners of the search warrant. What probable cause they ever put forward to support what they actually did, we don't know other than they never put forth any facts, whether in camera or to the district court below, that would support an extraordinary need to go into our attorney-client privilege. How would they know what's attorney-client privilege about just taking documents? Because the file, again, has a label on it that would indicate it. If you look at the inventory, Judge Hood, you'll see that the agents themselves noted that they were taking possibly tainted material. But there's a solution to that, isn't there? There is a solution. The solution that we want to get to is the solution in Zola. It's the solution the Supreme Court put forward. When the Supreme Court said that even a neutral judge does not have an automatic right to review putatively privileged materials, there must be some showing by the government to support that it's necessary akin to probable cause. That was all kept secret so you had no opportunity? That is, the basis for the whole operation was not disclosed so that it could not be counsel for foundations here could not know why the search warrant was issued? That seems strange to me. We specifically alleged, first of all, that they did not disclose to the magistrate judge that they were going after attorney-client privilege material. There's nothing within the warrant that would indicate that they were authorized to do this. Well, if the company had been hiding incriminatory material with the counsel's office and the counsel was in a conspiracy with others in the company to violate the law concerning bribery and so on, that would have been a basis for this, I would think. But here you're saying you were never advised as to what the basis for it was? No, and we allege that, first of all, they had not gotten... What is the law about that? You don't have... you can keep all this secret? Well, the judicial process, I mean, we've got the Fourth Amendment. There's nothing in the Fourth Amendment that says that probable cause should be secret and non-transparent. I just wonder what the basis for that non-transparency is. Well, Your Honor, the government might argue that they have a legitimate need during the investigatory phase to keep certain information under seal, and we're not here to dispute that. But when you come to court, it's not just... Right, right. At the point... It's now before the public. Right. At the point we went to the court and said, look, there's nothing in this warrant to indicate that they got judicial authorization to do it, and they don't have the right as a matter of course, and that at heart is what this is about, is where our system is going is the government is taking the position that they, on their own initiative, can intentionally seize attorney-client privilege materials, provided they review it from what's called a taint team, or they would prefer to call it a filter team. And our position is that's fundamentally in conflict with the Supreme Court's decision in the United States v. Solon, and it's a departure from the great body of law that speaks to the importance of the attorney-client privilege and the protections that are given it. Judge Merritt, as you said in In Re Lot, it is not hyperbole to suggest that the attorney-client privilege is a necessary foundation for the adversarial system of justice. The district court dismissed our case without asking any questions. The court never asked them whether they ever had judicial authorization or provided any information to the magistrate judge to support seizing our attorney-client privilege and our attorney work product. And if Solon stands for the principle that a neutral federal judge cannot, as a matter of automatic right, review putatively privileged materials to determine whether the crime-fraud exception applies or they're otherwise not privileged, then the government does not have an automatic right to do it. How long has this been going on here, this case? It started when, so far as you know? The case, Your Honor, began fairly quickly after we were retained in that we notified the government that our attorney-client privilege materials had been seized. When was that? That was in the summer, approximately June of 2013, and there was a period of time where we worked, and this is in the record, you'll see the letters that go back and forth. The attorney-client problem here that comes about from the confiscation of that occurred before that time? Yes, sir. The execution of the search warrant was June 3, 2013. You came into the case? I came into the case shortly after that. They retained new counsel, and I sent a letter to the government informing them that they had taken substantial amounts of attorney-client privilege material. Coming up on two years? Yes, sir. Now, what's happened to the material since that time? I don't know, Your Honor. It's not in the record. We sought injunctive relief to try to prevent the review of the material until we could get judicial review from this court, and we were not able to get injunctive relief. What I know is nothing's come back to us. There's no understanding here between counsel or the government and the company about how long the material is going to be kept? No, sir. We tried in good faith, and I negotiated with the government in good faith.  But we were unable to resolve this issue for a number of reasons that, frankly, aren't in the record or in the context of settlement discussions. Because both of you had different views as to what good faith was. I think that's accurate. The point I would want to – I'm sorry, Your Honor. Counsel, I think we need to talk about jurisdiction. So you sought relief in the district court on two bases. One was general injunctive relief, and one was under 41G? We filed a Rule 41G motion, which we styled a Rule 41G motion or, in the alternative, a civil complaint for the return of our property. Why did we also call it a civil complaint? Because, Judge Merritt, your case in white fabricating took jurisdiction of one of these cases and said, frankly, we can consider this either a Rule 41 type proceeding or, frankly, it's akin to a civil proceeding. So that's what we filed in the court, and that's what the district court denied without ever holding a conference, asking any questions, trying to find out what happened here. When you say that's what the district court denied, I'm sorry. The district court denied both, denied relief in both. Right. I mean, essentially what we did was brought a Rule 41G motion, which by its plain terms says that a party aggrieved by an unlawful search and seizure or – and the or is important to us – or needs their property back can file a motion for return of property. This is a case law that talks about when the court will entertain – when the court will treat this as a 41G and when we will treat it as an appealable order. I mean, I think there's a real jurisdiction issue here that was deferred to this panel. As I understand it, when you have – you go in, you got a ruling, the court said, no, they don't have to give it back. And you have to establish that that is the kind of order that this court entertains on appeal. And then the courts distinguish between an order that's trying to get back concrete property and an order that is really in the nature of ancillary proceedings to anticipated criminal proceedings. I understand the issue. Let me address it for you. And this goes to the appealability of the denial of the Rule 41 motion. Under the plain language of the Supreme Court's case in Dabella, we have the right to appeal this court provided there's no prosecution in essay and the motion seeks only the return of the property. We comply with the plain language on both those terms. There is no prosecution in essay. There's no indictment pending. And there's no dispute, as I understand it, from the government on that. So you don't have an objection if they just give you back the originals and keep copies? No, we've asked for the copies back. And the issue of keeping copies does not convert a motion for the return of property into a motion to suppress. And the Sixth Circuit said that in Sovereign News, and it also said it in Curry. What's more, the 1989 Advisory Committee notes to Rule 41 expressly allow for an order for the return of all copies or the certification by the government that they've destroyed all copies. What's happened in some of these cases, and I want to get back to sort of the high point, and then let me come back to the issue of cases, if that's okay. But the Sixth Circuit, in more than five cases, has allowed appeals from the denial of Rule 41 motions. This court did it in Frisbee. It did it in Sovereign News. It did it in Search of Music, City Marketing. It did it in Curry. It did it in your case, White Fabricating. And I think the Sixth Circuit rule is the right rule. It's a bright-line rule that doesn't take us into a subjective determination or what are the real underlying purposes of these people. It just says, look, if the relief you're asking for is return of property, and that's the relief we're asking for, and there isn't an indictment pending, we will take your appeal. And that's what the Sixth Circuit has done. That's consistent with the language of Dabella, and it's consistent with the only Supreme Court case that I know of. You said if you're seeking it and there isn't or there is an indictment pending. Is not an indictment pending. So without an indictment pending, it's a Rule 41 motion. If an indictment's pending, it becomes a motion to suppress under the criminal rules. So I know of one Supreme Court case that's looked at Dabella since it was decided. There may be more, but the one I know of is the one I filed on Monday as a 28-J supplemental authority. That's United States v. Ryan. That's a unanimous Supreme Court decision, and what it says is there's a special allowance for appellate jurisdiction for the denial of Rule 41 motions. Why? The Supreme Court unanimously tells us in Ryan. It's because you may never get the opportunity to have the seizure and retention of your property reviewed, because if they don't indict you, you can never file a motion to suppress. Take a look at Ryan. So, I mean, we squarely fit within the rationale of United States v. Ryan to bring this appeal, and what's more, the leading treatise in this area, Wright and Miller, says that the Sixth Circuit's rule is right. So I will acknowledge there's a circuit split on this issue. There was a case up in the Supreme Court where the Solicitor General was ordered to respond, and it got resolved and then dismissed. There's a circuit split, but the Sixth Circuit has to follow its own case law, and it's on the right side of the split. The Sixth Circuit's rule is the right one. The government, of course, relies on it. I've cited five cases, and I think there are actually more where the Sixth Circuit's taking these appeals. The government cites one case, In re Warrant, December 1990. Assuming we have jurisdiction, what would you have this court do? Thank you. I think what this court needs to do is two things. Fundamentally, we think you should order the return of the property with an order instructing us to retain it, and the government, because we're not asking for suppression, the government has the right to, by lawful means, to get it from us or third parties and use it in other ways. Essentially, the holding that gets us there is, and I think this holding would do immense good for our administration of justice, is to make clear that when the government is intentionally intending to seize putatively attorney-client privileged materials, they need to get judicial authorization. There needs to be judicial review of this because this goes to the very heart of our system. If the government can come in... I get back to the problem. Shouldn't that then go back to the trial court to determine what the government's motive was? No, it's... How did they know that they were taking... For example, how did they know they were taking attorney-client matters? Because people should be deemed to have intended the natural consequences... Are you saying when you execute a warrant you can't, in a situation like this, general counsel's records are off limits? They are, except in extraordinary cases. Well, then you're saying they are, that you need... That if you have a warrant to get the business records of a particular place, you're concerned, whatever it is, you have the warrant, that you can take the records but you can't take the GC's records? That's correct, unless you make a showing that would support something like the crime-fraud exception. And under a clear application of Zolan, at that point the government should explain to the magistrate judge why they believe that the in-house counsel for the corporation is involved in criminal activity and what the scope of the waiver is under the crime-fraud exception. Because if you look at our log, which has 208 examples of privileged documents they took from us, you see substantial amounts of privileged material between other executives and outside counsel. And I don't think the government was ever prepared to say that all these outside counsel were involved in perpetrating a crime. But that's what happens when you start going through it. I mean, if that's the case, then basically every time there's a seizure of materials pre-indictment, the courts have to get involved and basically go through the documents. No, our fundamental point to head this off, the solution, Judge White, to this problem is to have judicial review of the issue before the warrants ever execute it. So if the government knows they're going in, the problem is without any judicial oversight, with rulings like the ruling we have here where the district court just dismisses it, the message to the government agents is they can come in and do it. As long as they use the tape. Just answer my question. Okay. The trial judge gave or the district judge gave what explanation for dismissing this? First of all, that there was no irreparable harm. We could not show we were irreparably harmed by the seizure of our materials. And there I think the district court erred in understanding what the harm is when you see privileged material. What's the next reason? Okay. I was hoping to get back to In re lot for a moment on the issue of harm, but I can move to the next one. The next one is that we had an adequate remedy of law. That what we should be doing is moving to suppress at some later time if we were charged, and I've explained why Ryan, United States versus Ryan, speaks to that. Or that we should bring a Bivens action and try to sue the agents and the attorneys personally to get our materials back. That was the reasoning. The district court acknowledged our argument under Zolan, but never addressed it, never explained how we could be wrong when we say that if a federal judge doesn't have a right without a prior showing to review this, how can government agents and attorneys sit in rooms and read our attorney-client privileged materials? Okay. You have your rebuttal time. Could I ask a question? Absolutely. This is a matter of curiosity. Do you know of cases or are there cases where the government has sought from a law office, not from in-house counsel, but from your firm or other similar firms, Zolan and Cromwell, somebody, to do the same thing? I know that Williams and Connolly tried to bring this issue to the D.C. Circuit. I mean where the government has sought information in the hands of the private lawyer rather than a situation like this where it's in the hands of corporate in-house counsel. That's what I meant to say. Do you know of situations where the government has sought from Williams and Connolly directly to get under either subpoena before trial or before indictment or through a search warrant directly from the lawyer's office, private lawyer, instead of the in-house counsel? I'm just wondering if they're making a distinction, at least in their own minds, between a professional lawyer's office outside of a corporate counsel? Well, I think the clear response to your question is Department of Justice policy requires the federal prosecutors to go to Washington and get approval before they go into an in-house counsel's office or outside counsel's office. Either one. They violated that policy in this case. Well, they didn't get... The reason I believe that to be true is I, and this is in the record, I asked them to respond. They would not respond. We put that in our papers. They never responded. We put it in our papers three or four times. They've never given us an answer to whether they violated their own Department of Justice policies. Those policies speak to the importance on this issue. The other thing I would say in response to your question, Judge Merritt, is I don't know of a case where they went in and executed a search warrant on Sullivan and Cromwell, but the Klitzman case out of the Third Circuit involves a search warrant executed upon a law office. You see I've got the terminology right. Not a raid. Right. Well, anyway, you answered my question. And the Third Circuit found that was unreasonable and ordered the return of the property, and that's one of the principal cases we rely upon in this appeal. Thank you. You have your rebuttal. Thank you. Good morning. May it please the Court, my name is Adam Hollingsworth, and I represent the United States of America in this matter. The threshold issue that this Court needs to decide is whether or not there's jurisdiction. And the company's appeal fails to develop a test because their motion isn't solely for the return of property. And how do we know that? It's because they're asking for the return of property they already have. They aren't concerned with enforcing their property rights. How do we know they already have it? How do we know they have copies of all those files? They have the originals. The government only took copies of these documents. So they already have them. So what is the truth? It's untrue that the search warrant was used to acquire documents that were on the desk of counsel? That's absolutely. Is that what you're saying? No, that is true, Your Honor, and that's the limited exception that there were some hard copy documents taken from the attorney's office, and copies have been made available to the company in case they need them. But the vast majority of the documents at issue here are electronically stored documents. Okay. So your response to that is that you've given copies of the documents back? Correct. Right. Correct. So what is this motion all about? This motion is about preventing the government from finding evidence of criminal activity. This motion is about preventing the government from reviewing the content of the documents. Yeah, but what's wrong with that? If you go in and you take clearly privileged material, why shouldn't there be a way of getting it back? Well, Your Honor, in this case, the government had a valid search warrant issued by a neutral and detached magistrate. Does that search warrant cover attorney-client materials? It covers any responsive document that's listed in that attachment regardless of where it's found. We have to remember that this was the search of a business. This was the executive office of a nursing home. You understood beforehand that it was the search of the general counsel's office, the lawyer's office of the company, right? Well, that's not in the record, Your Honor. The agents were at the agency. You don't think you did understand that? Look, let's just be frank with each other here, counsel. Did you know, did the government know, the FBI know that it was going to get information directly from, and it did get information directly from, counsel's desk? No, they were there to search a business, and they were authorized to search that business. They were authorized to search anywhere within that business that responsive documents may be found. You didn't know in advance that the FBI might search the counsel's office itself? No, Your Honor. Or documents? No, the agents had never been to this business before. This is the first time that they'd set foot in there. And there was no authorization following this rule that apparently the Department of Justice has, if you're going to go into and get attorney-client or ostensibly attorney-client privilege information, that you've got to get the approval of whoever at the criminal division? That policy is there. It's internal DOJ guidance. If you know that you're going to search a general counsel's office, you do need to get advance approval from Washington. In this case, and they've asked us several times about what happened with our internal policies. I'm asking you the same question. And I'm telling you, Your Honor, the agents did not intend to seize any attorney-client privilege documents from the general counsel's office. So advance approval was not sought. Okay, did they get? We did inform Washington almost immediately after that that's what happened. How long do you expect to keep all this information? Well, Your Honor, that's an excellent question. And as this panel has pointed out, the search occurred almost two years ago. So where's the indictment? Well, Your Honor, it wouldn't be an exercise of prudent prosecutorial discretion to seek an indictment when you haven't reviewed the search warrant documents. So the company, and that goes to the true purpose. You're saying you haven't looked at them? No, Your Honor. The company sought an injunction with the district court, with this court, with the United States Supreme Court, tying up the agent's ability to review these documents. Was that granted? No, it was denied, Your Honor. Okay, then I don't understand. So the agents are in the process of reviewing the documents, but they haven't reviewed all of them. Two years they've been reviewing? No, no. The companies sought an injunction that delayed the ability of the agents to look at these documents. When was it denied? The Supreme Court denied in the fall of this past year. So the agents have the documents now. They've been segregated to create a universe of potentially privileged documents and then a universe of non-potentially privileged documents. And the investigative team is going through and reviewing the documents that were not deemed to be potentially privileged. You're saying to this court, and I want to be clear about whether they understood they were not going to be searching a lawyer's office for information that might very well fall under the attorney-client privilege. You're saying that the FBI did this and went into the lawyer's office and got all this information without knowing or thinking that that might be a problem? Your Honor, they were there to search the business for these responsive documents. Most of the FBI agents, or used to be, a lot of them were lawyers. They know what the attorney-client privilege is. In fact, the public knows what the attorney-client privilege is. Certainly. This looks like an obvious violation of the attorney-client privilege on the surface, to go take all the documents in the lawyer's office. I mean, I couldn't believe that the Department of Justice or the FBI would come into Williams and Connolly or Sullivan and Cromwell or any other private law office and do this kind of thing. Well, in that case, it would be clear that they were searching an attorney's office. Here, they were there to search a business. They didn't know that there would be a general counsel's office there. If you need prior approval, let's say that they knew that this particular business, did you know that this business had a general counsel? There's nothing in the record showing what the agents knew at the time of the search. Okay, well, let's say you know that. Now, how do you handle that when you're getting the search warrant? Certainly. If you're seeking a search warrant, you need to establish probable cause that a crime has been committed and that there's probable cause to believe that the evidence of that crime is in that specific location. There isn't a separate or higher standard when it involves attorney-client privilege information. Okay, so then you're saying it doesn't matter whether they knew it or not. If you go in, if a place has, that basically if you have general counsel, you need to store the documents elsewhere. From a constitutional matter, it doesn't matter, Your Honor. So, the agents in this case demonstrated probable cause to the magistrate who gave them authority to search that business and search anywhere. What does matter is how the execution of the search warrant takes place to protect the privilege. And in this case, I can represent to you. It was all segregated. It was all segregated, and that day the agents designated agents to act as filter agents in the event that they came across privileged material. So then why isn't it the case that now that you have it and you've identified it, there should be a threshold showing of probable cause to believe that there's some reason that in those privileged documents, you will find non-privileged evidence of this crime, alleged crime. Well, and so the filter team that Judge Gahan constructed is intended to do exactly that, to segregate out any potentially privileged documents from those that are non-privileged and provide access to the prosecution team for only those documents that are non-privileged. And the structure that Judge Gahan endorsed went above and beyond a typical filter structure. A typical filter structure is segregated agents and attorneys who make the decision independently and send it to the prosecution team. That's not what this is. What this filter structure does, it adds two layers of protection for the privilege. It involves the company's counsel to create that universe of potentially privileged documents and then consult with the company's counsel to make sure that the company agrees whether a potentially privileged document... I'm sorry, it involves company's counsel what? It does. How does this work? So we've got a universe of potentially privileged documents that only the filter team and the company's counsel can look at. And before any document goes to the prosecution team, the company's counsel has to agree that it's non-privileged. Who is the filtered? There's no statute about a filter team or something. How does this arise? What is the authority for it? Did the Department of Justice create a situation? What happened here? Yeah, so in practice, the filter teams are very common. I can represent that in our office. We have about a dozen going on at any given time. Your office is? The Northern District of Ohio, Your Honor. And you're in contact with the Department of Justice? Criminal Division about this, I take it? Yeah, filter teams are a common practice across the country. And it's, in fact, to protect the privilege. The principle is that we segregate the prosecution team from the filter team to make sure that no privileged information is disclosed, used against the company. Kind of a Chinese wall. That's exactly what it is, Your Honor. And so in this case, so we've got the typical filter structure with a separation. In addition, Judge Gahan ordered that the company work with the filter team to make sure that no privileged document goes to the prosecution team. An additional layer on top of that is that Judge Gahan is designated to resolve any disputes. So it's not that the government thinks it's not privileged, the company thinks it is privileged, the government wins, it goes over. No, the judge gets to decide. An Article III judge makes the final decision. So there are two additional layers of protection to protect the privilege. And based on this court's reasoning in In re Grand Jury Subpoena, which was talking about the use of filter teams in the search warrant context approvingly, this goes above and beyond that. So it certainly wasn't an abuse of discretion for Judge Gahan to decide that that process adequately protected the privilege and did not cause... What do you say about Zola? Pardon me? What do you say about their arguments about Zola and Ryan and... Yeah, so Your Honor, I say that Zola is a common sense gatekeeping feature when you're talking about the crime fraud exception. In that case, it ensures that individuals can't make baseless claims that I think that there's some crime fraud going on here. Judge, why don't you take a look at the documents and let me know. What it does say is that you need to make some threshold showing before you invoke the power of the court to make that determination. It's a common sense rule and I think it makes sense. What it doesn't do, it doesn't apply to the search warrant context. It doesn't apply to the filter team context. Well, but why doesn't it apply by analogy in the sense that, yes, you've got a general warrant, but we're talking about a very specific context, a very specific set of documents. Sure. So the warrant that the government received was based on probable cause that the documents might contain evidence of the crime. And that's the showing that was made. And the agents were authorized to seize any documents that were responsive to those categories of documents. So they made a showing to a judge. And they made a showing of probable cause that responsive documents would be at this business location. And that's exactly what happened. But counsel, when the FBI agents went to the business and then went in the door of legal counsel, surely they are wise enough to know where they're going once they get there. Absolutely. And that they're searching the desks and the information that is coming out of the office of legal counsel. That's right. And what is the possible basis for that without informing the magistrate court, the court in advance? You know, the attorney-client privilege is one of the most fundamental privileges, like the doctor-patient privilege and others, that protects the privacy of individuals in this society that we have developed over many years of common law, sacred. Why should we permit that to be done once they know they're just about to go in and do that without some prior authorization?  They didn't tell the magistrate we're going in to a lawyer's office and take the records off his desk. And they didn't know that, Your Honor, in advance. They did it, didn't they? That's exactly what happened because the road was fine. They knew where they were when they did it, didn't they? Yes, they did, Your Honor. Okay. Why didn't they go back and say, uh-oh, look, we've got this problem. We want some authorization. Here's the reason. They didn't do that. They just took it. They weren't required to. They had a warrant to search anywhere. Well, that's the question. You're saying it's not constitutionally required. That's what I'm saying, Your Honor. And if that was the rule, if that was the rule. So even if they knew they were going in, they wouldn't have to say that, right? They wouldn't. Would they have to establish the crime-fraud exception? Just to be clear, there's no allegation that there is a crime-fraud issue here. It's just that there were responsive documents found in the course of the search, and they were seized pursuant to a valid warrant. Well, then why wouldn't you just give them back without reviewing them? Because we can't take the company's word that they are privileged. They might not be privileged. And so that's what the filter team is designed to do. And so if the rule was as the company has suggested, then it would incentivize people to just put evidence of crimes in a general counsel's office. It's off limits. You can't look at it. Right. But that's exactly right. But that's got to be looked at, and the Department of Justice has got a right to do that. The problem is before they go into a lawyer's office and take the records out of the lawyer's office, there ought to be some authorization in advance on the basis of some kind of probable cause that they are not transgressing, only transgressing, the attorney-client privilege. There would have to be, I would think, some kind of proof that there is a probable cause on the question of the crime-fraud privilege or something. Your Honor, that's not all that's contained within a general counsel's office. Often general counsels wear multiple hats in a business, and certainly much of the material that they create is not covered by the attorney-client privilege. Much of it is. And that's why we have the filter review. The government wants to get it all. And that's why we have the filter review, to make sure that the privilege is protected and to make sure, especially with the way that this filter process has been constructed, to add the additional protections of the involvement of the company and the involvement of an Article III judge to resolve any disputes. It certainly wasn't an abuse of discretion for the judge. Is the case law about the question of the FBI going in and taking records from a lawyer's office? Is the case law about when they can do that? If they have probable cause to believe that it contains evidence of a crime. It's the standard Fourth Amendment search warrant standard. There's no heightened standard when it involves a lawyer. Well, but the circumstances would be different, wouldn't they? Certainly. If you were searching a law firm or a law office, there better be probable cause in that affidavit that evidence of a crime is there. Absolutely. Well, that's what they were doing here. They were searching the office of legal counsel for records. They were searching a business. And they were authorized to search that business. But you know there are parts of businesses. One of them may be legal counsel. And that legal counsel is acting under the view of the Upjohn case, just like the legal counsel itself in the crime law. And they went right in there and took it off without making – they had a search warrant to allow them to do things at a business, but they didn't have a search warrant that said you can search a lawyer's office at the business. They didn't need a separate search warrant. They had a search warrant. Well, that's your view of it. That's what we've got to decide. Okay. Where is the support for that? I mean, you're saying that there's no contrary law, that you cannot – that when you have a general search warrant for a business that you don't need – Well, I mean, you were told that you could collect all the documents and records, right? With the idea that they would have evidence of illegal activity, right? Right, if they were responsive to the subpoena. Okay. Or to the search warrant. Okay, so then I guess the question is, is it reasonable to assume that records in counsel's office will contain evidence of crime? On these facts? Yeah. Yeah, so the hard copy documents that were seized, I haven't seen them yet, but the agents have represented to me that they were responsive to the categories in the search warrant, that they were plainly responsive. And so whether or not the prosecution team can see those documents and use those documents depends on whether they're privileged or not. Wait, wait, how do they know that they're – I mean, how do they know that they're responsive? The filter agents looked at the documents, and on the face of the documents, they were responsive to a category in the search warrant. So they were responsive, they were seized pursuant to the warrant. Whether or not the prosecution team can look at them is a separate question and will be the result of the filter process. But you're saying some of the records have already gone through the filter process. The electronically stored documents, search terms have been applied to them to create the universe of non-privileged documents. Okay, but you're talking – I'm sorry, I'm only talking about the lawyer's documents now. Yeah, so there are two sets of lawyer's documents. There were the hard copy folder of documents, that's one, and then there were the electronically seized documents. So I haven't seen any of the hard copy documents. Presumably, the filter team decided that they were privileged, and so we haven't seen them. Right, but should there be – you have a warrant that establishes some sort of probable cause that evidence of a crime is going to be found in this business. Correct. Okay. Should that presumption include documents located in the general counsel's office or documents created by the general counsel? It allows the agents to search anywhere within that business. I'm asking you a question. Yeah. Should the fact that there is probable cause to believe that there may be documents establishing criminal violations in this business, okay, should that same information that establishes that also support the inference that you will find such evidence in documents generated by general counsel? If the general counsel's office is located within that business,  Okay, you don't want to answer my question, do you? Maybe I'm misunderstanding. Then try to listen to it, okay? You have an affidavit that establishes that there's probable cause to believe that documents found in a business will give you information about criminal activity, okay? That's a general assertion. I am asking you whether those same facts in that affidavit should be understood to establish probable cause to believe that documents generated by the general counsel of that business, that those documents will contain evidence of a crime. That's not protected by the attorney-client privilege. Right. And so the agents were authorized to search to see if those documents existed there. Would you please answer my question? Did the facts in the affidavit, okay? If you're asking me did the affidavit describe facts to suggest that the attorney was complicit in it? I'm asking you under all the circumstances, okay? And I'm not talking about this particular case necessarily. When you have facts to believe that the general business records at a particular location will establish evidence of a crime, is it reasonable to also infer from those facts that the records of general counsel will also contain evidence of that crime? No, I don't think it's reasonable to infer that automatically. No, I don't. Okay. Now let's go to this case. Was it reasonable to infer that based on the affidavit supporting the search warrant? It was reasonable to infer that based on the fact that those documents were found there. That is not an answer, and you are a smart man and you can answer my question. Because I don't have an answer. No, I mean then say yes or no, because if you're saying yes. So I thought I already answered the question that based on the information that was in the affidavit, there was no reason to think that. They walked into the office, they knew it was general counsel. They did. Okay. So a light goes off. They go, okay, I have a general search warrant here. There is probable cause to believe that all of these documents all over this place have evidence of criminal activity. I'm now standing in general counsel's office. And we didn't know that, that we were going to find that. There's a file here. Is there probable cause to believe that that file has evidence of criminal activity? I think. Not am I authorized to take it. I'm asking you, does that person have probable cause to believe based on that search warrant that that file has evidence of criminal activity? Based on the filter agent's review of those documents, they believe that they were responsive to the search warrant. Was the filter agent in the field? Yes, and that's an important point. And I didn't understand that. I am very sorry. I thought I had made that clear. The filter agent was with the FBI? On the day of the search, the search team designated filter agents to make sure that if they came across potentially privileged information, it would only be seen by the filter agents. And I apologize if that wasn't clear. No, it wasn't clear. I'm sorry. That was part of the protections that were in place on the day of the search. We may need some further briefing on this. I'm not sure then, because that's early. So when they got the search warrant, they were filter agents or somebody was aware of what was going on there, and then everybody, including the filter agents, as a separate group from or along on the, as he said, the raid, along on the execution of the search warrant? Yes, it's a common practice for the FBI to designate filter agents for a search in case they come across privileged documents that they're not anticipating to come across. So it's an agent, it's an FBI agent? It is. But now when you're reviewing the documents, it's actually a U.S. attorney? It's a combination of filter agents and a filter attorney who then works in conjunction with the company and the judge to make sure that no privileged documents cross the barrier. Okay. Do you have any other questions? Thank you. Thank you so much for your time. Thank you. I'm sorry for the misunderstanding. No, it's my fault. Thank you. This is the first time the government's really spoken about what happened here, and many of the things my friend said are not in the record. I do want to respond with some points that I think are relevant to questions asked by the court that are in the record. First of all, when you talk about the fact that information was later determined to be responsive that was found in the general counsel's office, you have an affidavit from the general counsel, Michael Provenza, which is in the record where he talks about one of the things they took in that file right off his desk was his analysis of the issues in the subpoena which contained material that he would have obtained under the attorney-client privilege from employees in the company when he was trying to find out what was happening. These agents absolutely knew that they were going in the general counsel's office. In the record, you have the inventory of the search, and that inventory makes clear. It contains the words attorney office and in parentheses possibly tainted material. They knew they were walking out with this. The warrant itself? What are you reading from here? I'm reading from the actual FBI inventory for the search warrant, which is in the record in this case. So you look at their inventory, and you know they knew what they were doing. The other thing they did of all the- They identified it. They said there's possible taint. Yep. Yep. But they didn't call the judge. They didn't seek authorization to do it. They just took it. Why? Because nobody believes there's judicial oversight anymore, but there has to be. The other thing they did was they chose to take the general counsel's entire e-mail account. Now this company has, depending on how you measure it, 1,000 employees or 70 employees in the executive offices. They choose five people to take their entire e-mail accounts. One of them was the general counsel, Michael Provenza. And I don't think Mr. Hollingsworth, on behalf of the government, has said anything to suggest that they ever believed Mr. Provenza was involved in any crime that would justify what they did. And we've got to remember what the harm is. Where the district court got it wrong was the district court didn't appreciate what you said, sir, in In Relat. The harm is the disclosure itself. And you're not alone in that view.  They said it in Zolan. Chief Justice Rehnquist said it in Swidler and Berlin. And the recognition is if we can't have security against the seizure of our attorney-client communications, then the communications between attorney and client break down. Mr. Premier, your solution to this problem, there is a problem here. There is a problem. Your solution is that before government agents come into and search for and take or search for documents that are potentially attorney-client privilege documents, that that should be disclosed to a neutral magistrate under the Constitution in advance of doing that and seek to do that on the basis of probable cause to believe that the general counsel's office is going to contain crime fraud information or something of that kind. That's right. Both material for which there's probable cause and a basis to believe that that material will, the attorney-client privilege would be. That would solve the problem. It would improve it from where it is because where we are now. Is the attorney-client, I'm sorry, go ahead and finish the judge's question. I shouldn't have interrupted you. Certainly. I was just going to say because otherwise where we go with our system is the message is there's no real oversight so long as they designate a separate group of attorneys and agents and whether they put the label team or filter team to look at it, that cures all ills. Well, the law is clear it doesn't. Is this a constitutional right? The attorney-client privilege is, the case law I have seen is that it is not itself a constitutional right but it's closely tied to the constitutional right to effective assistance of counsel. Judge Merritt's decision and Ray Lott speaks as well as any I could cite to why this is so important. Look, federal prosecutors for decades have known that this is the third rail you do not grab. You do not go into somebody's attorney-client privilege and work product during an investigation. This is a line you don't cross except in extraordinary cases. Well, suppose I go into the attorney's office and there's a whole mass of stuff there and I go through it. I've been told I can go through the building. Right. And I go through it and I go, whoa, this might be attorney-client privilege stuff. What do I do? On the other hand, there may be a lot of stuff that isn't. Right, but under the circumstances of this case where you've put the company on notice of an investigation, you've got to be prepared for the fact that if you go into their counsel's office, you're going to find attorney-client communications and attorney work product, and you have to respect that. And if you have a true basis on the part of the government to believe you have a legal right to go there, and we're talking about an extraordinary case. Now, this is basically a fact-driven situation because absent that subpoena, they wouldn't know. And that's what we've really struggled with Judge Boggs' decision in in-rate grand jury subpoenas. The government says it's a great decision for him. Sure. But, in fact, Judge Boggs says that taint teams pose a serious risk to the attorney-client privilege, and he doesn't let the government use a taint team in in-rate grand jury subpoenas. Now, in dicta, he allows an exception for exigent circumstances, and I think that's what you're talking about, where the government, in executing search warrants on businesses, is going to, from time to time, inadvertently stumble into privileged materials. What's the best practice there? The best practice would be to contact the magistrate judge and say, we've hit this situation, how should we handle it? Because we have a need to get evidence, but we don't want to intrude on the attorney-client privilege and go over it. But that's not the situation we have in this case. This is not a case of exigent circumstances. Well, you say there's no judicial oversight, but it sounds like this judge has ensured that there's judicial oversight. Well, what the judge has said is go ahead, even though the government never answered any questions the way they just did here. The judge never asked them a question about whether there was any authorization to do this. The judge said, go ahead with your filter team, because these guys can't show irreparable harm. The outcome of this case is, if our attorney-client privilege material can be deliberately seized, and these agents knew they were removing attorney-client privilege during investigation, if it can be deliberately seized and we can't show irreparable harm, then the government can keep doing this. Okay, but then all you have to do is put your files in the attorney's office, because you're not allowed to have a TAME team to look at it. Well, and I want to go to a point that I think is important in answering your question, which is that when the government says our true purpose was about preventing the government from investigating or delaying this thing, remember, they also served a subpoena on us, which contained the exact same subject matters as the search warrant, and we produced 83,000 pages of documents in response to that subpoena. So we're not preventing them from investigating anything. They have all that material. Okay, but they also got a search warrant. A magistrate, and you're not challenging that, and there may have been a perception that they didn't get all the materials. Who knows? But your answer is that no one should look at this, and we should order it returned. That's your answer, right? Right. Anything that's taken from the GC's office, no one can look at it, and it has to be returned. Right, that all these materials should be returned to us, and we frankly, the non-privileged ones, we've reviewed. We would preserve it. If they have some basis to claim that our assertion of the privilege is wrong, then bring forth your evidence. But, you know, when you read this great body of case law on the attorney-client privilege, judges before you have recognized the possibility for people to hide behind the attorney-client privilege. It's one of its costs, but as the great body of case law also says, it's a necessary cost to preserving the right to counsel. And we are in a situation where agents can come in at any time and take our privileged material, and if the district court's order stands, we don't have a recourse to challenge it. We have a hypothetical recourse at some point in the future, but at that point these materials have been reviewed. But this judge did listen to your challenge. This judge wrote an order, but never, we made strong allegations against the government, and my friend here is an honorable man, and, you know, I'm not impugning him with a lot. The judge listened to your challenge. The judge read our papers and wrote an order, but the judge never even held a conference on this matter. The judge never asked the questions you asked. And, you know, the two basic errors here in the district court's order are, one, the district court's saying that there is no irreparable harm from having your attorney-client privileged materials does not square with what courts have said before. In Klitzman, in the D.C. Circuit case, you know, in research of Rayburn, which has to do with a legislative privilege. But fundamentally the court missed the point in In Re Lot that the harm is the disclosure itself, and that's the key point here. In addition, the court gave no sensitivity to the potential harm that Judge Boggs identified. And you read the string site of cases. Go ahead, but I'm sitting here thinking to myself, we've got a, I think it's a filter agent that went through these and said these are possibly attorney-client. So you made a motion. We've got all this potential attorney-client matters. Judge Goggins sets up a filter team, right? Sets up a filter. Well, that's the default. The government said we're going to do a filter team, and Judge Goggins essentially said. Regardless, there's a filter team. Right. And if these documents go through and there's no disclosure, then who's hurt? I mean, who's hurt? What harm is there? Well, that's the issue. The harm is that our work product is being reviewed by government agents. It's the apprehension. I never got to our second issue, which is scope BSI. Thank you. This will be submitted.